IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KENT BERNBECK,

                    Plaintiff,

          vs.

JOHN A. GALE, Nebraska Secretary of
State, and CHARLOTTE TEBRINK, Clerk
of the Village of Denton, a Political
Subdivision of the State of Nebraska;

                    Defendants.

8:13CV228

MEMORANDUM AND ORDER

This matter is before the court on defendant Charlotte TeBrink's motion for summary judgment, Filing No. 24, and defendant John Gale's motion for summary judgment, Filing No. 27, both pursuant to Fed. R. Civ. P. 56.  Plaintiff brought this action alleging that he has been denied the right to place initiatives on the ballot in the State of Nebraska because of (1) his inability to hire paid circulators who receive money per signature; and (2) the requirement of Neb. Const. art. III, § 2 that he obtain 5% signatures per county.

**BACKGROUND**

Plaintiff is a resident of Douglas County.  Defendant Charlotte TeBrink is the duly appointed and acting Clerk of the Village of Denton, Nebraska.  Defendant John A. Gail is the Nebraska Secretary of State.  The court adopts the following facts for purposes of this motion:

4. During early 2012, Bernbeck sponsored a municipal initiative petition (the "Municipal Petition") in Denton. (Filing No. 1 at CM/ECF pp. 3, 13, ¶¶ 6, 26-27; Filing

No. 14 at CM/ECF pp. 4-5, ¶¶ 26-27; Filing No. 25-1, Affidavit of Charlotte TeBrink ("TeBrink Affidavit") at CM/ECF p. 1, ¶ 2.)

Claim One

5.   The Municipal Petition was received by TeBrink, as Village Clerk, on May 7, 2012.  (Filing No. 25-1, TeBrink Affidavit at CM/ECF p. 2, ¶ 4.)

6.   Denton filed an action in Lancaster County District Court (the "State Proceeding") asking the court to determine the validity of the Municipal Petition and instruct her accordingly.  (Filing No. 1 at CM/ECF pp. 3-4, ¶¶ 7, 28-30; Filing No. 14 at CM/ECF pp. 5, ¶¶ 28-30; Filing No. 25-1, TeBrink Affidavit at CM/ECF p. 2, ¶ 5.)

7.   Bernbeck participated in the State Proceeding.  (*Id.*; Filing No. 25-2, Affidavit of Stephen D. Mossman ("Mossman Affidavit") at CM/ECF p. 1-4, ¶¶ 3-18, Exh. A-P.)

8.   In the State Proceeding, Denton and Bernbeck litigated whether the Municipal Petition was a proper "measure" for an initiative, whether signatures collected by a paid circulator should be counted, and more generally, the propriety of the Municipal Petition as well as the propriety of the State Proceeding.  (Filing No. 25-2, Mossman Affidavit at CM/ECF p. 1-4, ¶¶ 3-18, Exh. A-P). Indeed, Bernbeck raised the issue of whether the pay-per-signature prohibition violated the First Amendment (*id.* at CM/ECF p. 2, ¶ 9, Exh. G; p. 4, ¶ 16, Exh. N), and Denton responded by pointing out that the statute had already been reviewed and upheld as constitutional by this court (*id.* at CM/ECF p. 3, ¶ 11, Exh. I at p. 2 (citing *Bernbeck v. Gale,* No. 4:10CV3001, 2011 WL 3841602 (D. Neb. Aug. 30, 2011)*; p. 4, ¶ 15, Exh. M at p. 8 (same).)

9.   Denton prevailed in the State Proceeding, but Bernbeck did not appeal the adverse final order and judgment.  (Filing No. 1 at CM/ECF p. 14, ¶ 30; Filing No. 25-2,

Mossman Affidavit at CM/ECF p. 4, ¶ 18, Exh. P at p. 2.)  The final order included a finding that the pay-per-signature prohibition had been previously upheld as constitutional by this court in the District of Nebraska Case No. 4:10CV3001 (the "Federal Proceeding").  (Filing No. 25-2, Mossman Affidavit at CM/ECF p. 4, ¶ 18, Exh. P at p. 2.)

10.    Bernbeck also was plaintiff and participated in the Federal Proceeding. (Filing No. 1 at CM/ECF pp. 8, 14-15, ¶¶ 16, 31; Filing No. 14 at CM/ECF pp. 6-7, ¶¶ 1-2; Filing No. 25 (requesting the court take judicial notice of pleadings in Case No. 4:10CV3001)).

14. TeBrink has alleged, and Bernbeck has agreed, that TeBrink should be severed from Claim Two in this matter.  (Filing No. 14 at CM/ECF p. 8 ¶ 7; Filing No. 16 at CM/ECF pp. 8-9, ¶ II(B)(6).).  (Defendant TeBrink's brief in support of summary judgment, Filing No. 26, ECF at 2-4).

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "The movant 'bears the initial responsibility of

informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting Celotex, 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Id.* at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.,* 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

**DISCUSSION**

*A.  Pay-Per-Signature Prohibition*

Plaintiff first contends that Nebraska law violates his First and Fourteenth Amendments to the United States Constitution and the Nebraska Constitution.  The statute states:  "No person shall: . . . (g) Pay a circulator based on the number of signatures collected."  Neb Rev. Stat. § 32-630(3)(g).  The defendants argue that this claim is without merit, as (1) this issue has already been litigated and is precluded in this lawsuit; and (2) it fails to state a claim in any event.

The court need only address the preclusion issues.  Plaintiff admits he participated in the state proceedings which directly addressed the same petition as in this case.  Under the Full Faith and Credit Act, "federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010) (citing 28 U.S.C. § 1738).  Asserting a claim under 42 U.S.C. § 1983 does not remove the preclusive effect.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82-85 (1984).  Under Nebraska law, the doctrine:

> bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

*Eicher v. Mid. American Fin. Inv. Corp.*, 702 N.W.2d 792, 809 (Neb. 2005).  It also bars issues that could have been litigated.  *Id.*

In the state court proceeding, defendant Denton requested a ruling that she did not have to place the petition on the ballot.  With regard to the paid signature

prohibition, the district court determined that the constitutionality of Neb. Rev. Stat. § 32-630(3)(g) had been decided by this court in *Bernbeck v. Gale,* No. 4:10CV3001, 2011 WL 3841602, *6 (D. Neb. Aug. 30, 2011).  Further, plaintiff did not appeal the state court judgment against him.

The court agrees with the defendants.  This legal claim was litigated previously in this court and again the facts and law litigated in state court.  Plaintiff does not get a third go-around.  "[I]f a litigant has raised and lost claims in state court, he may not recast those claims under section 1983 and try again.  He must follow the appellate procedure through the state courts and seek review before the Supreme Court." *Prince v. Ark. Bd. of Examiners in Psychology,* 380 F.3d 337, 340 (8th Cir. 2004); *Rooker-Feldman* Doctrine; *Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 754-55 (8th Cir. 2010).

Claim One in this matter is identical to one of the issues decided by this court in the federal proceeding which involved the constitutionality of the pay-per-signature prohibition, Neb. Rev. Stat. § 32-630(3)(g).  Case No. 4:10CV3001, Filing Nos. 27 and 62.  In the federal proceeding, Bernbeck was given a full and fair opportunity to be heard on the issue of the constitutionality of the pay-per-signature prohibition.  *See Bernbeck*, 2011 WL 3841602, *4-5.  This court rendered a final adjudication on the merits, and his claim is consequently precluded.

The same analysis applies as to issue preclusion.  This court heard and addressed plaintiff's claims which are the same as decided in *Bernbeck*.  The Eighth Circuit has stated:

> (1) the issue sought to be precluded is identical to the issue previously decided; 2) the prior action resulted in a final adjudication on the merits;

6

(3) the party sought to be stopped was either a party or in privity with a party to the prior action; and (4) the party sought to be stopped was given a full and fair opportunity to be heard on the issue in the prior action.

. . . .

For collateral estoppel to preclude an issue, the issue must be identical to the issue previously decided. The party seeking collateral estoppel has the burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States,* 493 U.S. 342, 350, 110 S. Ct. 668, 107 L.Ed.2d 708 (1990). "[W]e must examine the record of the prior proceeding, including the pleadings and evidence, keeping in mind that the party asserting the preclusion bears the burden of showing 'with clarity and certainty what was determined by the prior judgment.'" *Wellons,* 869 F.2d at 1170 (citation omitted) (quoting *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir.1985)). The doctrine of collateral estoppel applies to matters necessarily decided in the former judgment even if there is no specific finding or reference thereto. *Nelson v. Swing-A-Way Mfg. Co.,* 266 F.2d 184, 187 (8th Cir.1959).

*Irving v. Dormire,* 586 F.3d 645, 648 (8th Cir. 2009). Further, "relitigation of the issue in a suit on a different cause of action involving a party to the first case" is precluded where that issue is necessary to the final judgment on the merits in the prior litigation. *Simmons v O'Brien,* 77 F.3d 1093, 1095 (8th Cir 1996), citing *Allen v McCurry,* 449 US 90, 94 (1980); *Montana v United States,* 440 US 147, 153 (1979). Plaintiff was indeed a party to the *Bernbeck v. Gale* litigation in this court. This court found that "[t]he prohibition against paying petition circulators on a per-signature basis found in Neb. Rev. Stat. §§ 18-2517 and 32-630(3)(g) does not violate the plaintiffs' constitutional rights." *Bernbeck v. Gale,* No. 4:10CV03001, 2011 WL 3841602, *6 (D. Neb. Aug. 30, 2011). The court agrees with the defendants and finds the issue alleged in this case is the same as the pay-per-signature issue raised in the federal proceedings and again at

the state level.  Neb. Rev. Stat. § 32-630(g).[1]  As such, Bernbeck is also barred from litigating Claim One under the doctrine of issue preclusion.

### B.  Statewide Residency Requirements[2]

The only issue raised by defendant Gale with regard to the residency requirement is whether plaintiff has standing and whether the issue is ripe for review.

Neb. Const. art. III, § 2, provides that "[t]he first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature."  "If the petition be for the enactment of a law, it shall be signed by seven percent of the registered voters of the state, and if the petition be for the amendment of the Constitution, the petition therefore shall be signed by ten percent of such registered voters."  Neb. Const. art. III, § 2.  Article III, § 2, includes a "Geographic Distribution Requirement", which provides that, "[i]n all cases the registered voters signing such petition shall be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state. . . ."  *Id*.

Plaintiff states he is involved in a statewide petition pending for circulation with voters who would like to place an issue before voters statewide, but he says he must have a declaration about the validity first.  Filing No. 34, Brief in Opposition, ECF at 2. Plaintiff states:

> Bernbeck is a single voter.  He lives in a single Nebraska County, Douglas County.  The US Census Bureau's studies indicate that Nebraska's 2012 estimated population is 1,855,525 persons.  The Census Bureau's estimate of the population for Douglas County, Nebraska, as of 2012, is

---

[1]Additionally, as the court stated in the first *Bernbeck* case, it is bound by the Eighth Circuit's decision in *Initiative & Referendum Institute v. Jaeger*, 241 F3d 614 (8th Cir. 2001).

[2] The court previously found that a claim under this section against defendant TeBrink is not viable.  See Filing No. 43, Order on Motion to Sever/Dismiss.  Thus this claim applies only to defendant Gale.

531,265 persons.  Douglas County is home to approximately 28.53% of the population of Nebraska.  Douglas County is adjacent to the County of Sarpy.  Its 2012 estimated population is 165,853 persons, or 8.93% of the state population.  Douglas County is also contiguous with Dodge County, Nebraska.  Its population for 2012 is estimated at 36,427 or 1.963% of the population of the state.  Washington County is also contiguous with Douglas County.  Its population is 20,252 or 1.1% of the state's population.  Saunders County is also contiguous with Douglas County.  Its 2012 population estimate is 20,823, or 1.1% of the state's population.  Nebraska has 93 counties; 41.56% of its population lives in 5 counties – Douglas, Sarpy, Saunders, Dodge, and Washington.

Sixty-four (64) Nebraska counties have populations under 10,000 persons each.  Twelve (12) Nebraska counties have populations of fewer than 1,000 persons each.  This means 64 Nebraska Counties combined have less population than the two counties of Douglas and Sarpy.  The geographic distribution requirement dilutes the voices expressed as signatures on petitions, and effectively the votes, of Petitioner and other residents of the state's populace counties.  This unconstitutionally infringes on Mr. Bernbeck's rights as a resident of the state's largest county, Douglas.

The distance across Nebraska, measured by the traveling distance on Interstate 80, is 454.15 miles from the easternmost exit onto Interstate 80 in Douglas County, where Plaintiff resides, to the westernmost exit, Exit 1, located .48 miles east of the Nebraska-Wyoming border at Pine Bluffs.  Measured by travel on US Highway 81 from Chester, Nebraska, on the Kansas border, to South Yankton, on the South Dakota border, the state is 217.5 miles.  The driving distance from border to border north to south is estimated at 3 hours 50 minutes, and at Interstate speeds the distance from the Pine Bluff, Wyoming exit to the western edge of Council Bluffs, Iowa is estimated at 6 hours 30 minutes.

Filing No. 34 ECF at pp. 8 and 9, Brief in opposition.  Plaintiff contends that this requirement inhibits his First Amendment rights, as it is harder to obtain the required signatures and much more costly.

Defendant Gale argues that the geographic distribution requirement applies solely to statewide initiative petitions.  In this case, he argues, the plaintiff is dealing with a municipal initiative petition.  Thus, the plaintiff's allegations as to the constitutionality of the geographic distribution requirement do not apply.  Further, argues defendant

9

Gale, plaintiff has no injury.  "Plaintiff is required to establish First Amendment injury in fact through factual allegations setting out a concrete and particularized injury." *Missouri Roundtable v. Carnahan*, 676 F.3d 665, 673 (8th Cir. 2012).  A plaintiff must show "more than a 'subjective chill' of their First Amendment rights."  *Id.* (citing *Walker, 450 F.3d at 1090*).

Plaintiff sets forth in his complaint that the geographic distribution requirement burdens his ability to succeed in a statewide initiative petition campaign.  To obtain these signatures costs more money and time, placing a significant burden on his First Amendment rights, urges plaintiff.  As a result, he states he has been forced to focus more on municipal initiative efforts.

The court finds the issue of the municipal initiative is not relevant to this discussion.  The relevant Nebraska Constitutional section applies only to statewide initiatives.  Thus, the court will review plaintiff's complaint as it relates to his ability to launch a statewide initiative campaign.  Plaintiff has participated in numerous statewide initiative efforts in the past and states he wishes to do so in the future.  Plaintiff states he wants to offer Nebraska voters a statewide constitutional amendment to lower the required numbers for initiative and referendum ballot petitions.  He argues that Nebraska's geographic distribution requirements for initiative petition signatures make rural signatures more valuable and more powerful than urban signatures, thereby violating one-person-one-vote criteria.  Petition circulation involves "both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer v. Grant,* 486 US 414, 421 (1988).  It is "core political speech."  *Id.* at 422.

Exacting or strict scrutiny applies to a review of a requirement that burdens core political speech. *Id.* at 420-422.

"The issue of standing involves constitutional limitations on federal court jurisdiction under Article III of the Constitution, which confines the federal courts to adjudicating actual 'cases and controversies.'" *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001); *see Oti Kaga v. South Dakota Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003). The threshold question in every federal case is the plaintiff's standing to sue. *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000). Without standing, the court lacks subject matter jurisdiction to hear the suit. *Young Am. Corp. v. Affiliated Computer Servs.*, 424 F.3d 840, 843 (8th Cir. 2005).

To acquire Article III standing, "a plaintiff must have a 'personal stake in the outcome of the controversy.'" *Potthoff*, 245 F.3d 710, 714 (8th Cir. 2001) (quoting *Baker v. Carr*, 369 U.S. 186, 209 (1962)). To satisfy the burden of establishing Article III standing, the plaintiff must show: (1) plaintiff suffered an "injury-in-fact," (2) a causal relationship exists between the injury and the challenged conduct, and (3) the injury likely will be redressed by a favorable decision. *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"An injury-in-fact is a harm that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Steger*, 228 F.3d at 892 (quoting *Lujan*, 504 U.S. at 560); *Faibisch v. Univ. of Minn.*, 304 F.3d 797 (8th Cir. 2002). Additionally, the injury must be "fairly traceable to the challenged action of the defendant." *Saunders v.*

11

*Farmers Ins. Exch.*, 440 F.3d 940, 943 (8th Cir. 2006) (quoting *Lujan*, 504 U.S. at 560);

*McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005)).   "To establish

standing, a plaintiff must show that it is likely that the remedy she seeks can redress her

injury."  *Faibisch,* 304 F.3d at 801; *see Monsanto v. Geertson Seed Farms*, 130 S. Ct.

2743, 2752 (2010) (Article III standing requires that an injury be concrete, particularized,

and actual or imminent; fairly traceable to the challenged action; and redressable by a

favorable ruling).

In addition to the immutable requirements of Article III, "the federal judiciary has

also adhered to a set of prudential principles that bear on the question of standing."

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State,

Inc.*, 454 U.S. 464, 474–75 (1982); *Oti Kaga*, 342 F.3d at 880.   Prudential principles of

standing are statutorily imposed jurisdictional limitations separate from and in addition to

constitutional standing requirements.  *Davis v. U.S. Bancorp*, 383 F.3d 761, 767 (8th

Cir. 2004).   "By imposing prudential limits on standing, 'the judiciary seeks to avoid

deciding questions of broad social import where no individual rights would be vindicated

and to limit access to the federal courts to litigants best suited to assert a particular

claim.'"  *Oti Kaga*, 342 F.3d at 880 (quoting *Gladstone, Realtors v. Village of Bellwood*,

441 U.S. 91, 99–100 (1979)); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11

(2004) (stating the prudential standing doctrine "embodies judicially self-imposed limits

on the exercise of federal jurisdiction").

"The ripeness doctrine is drawn both from Article III limitations on judicial power

and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality

Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808 (2003) (quotation omitted).

> The judicially created doctrine of ripeness "flows from both the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000) (citing *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S. Ct. 2485, 125 L.Ed.2d 38 (1993)). "'Ripeness is peculiarly a question of timing' and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Id.* at 1039 (quoting *Anderson v. Green,* 513 U.S. 557, 559, 115 S. Ct. 1059, 130 L.Ed.2d 1050 (1995) (per curiam)). A party seeking review must show both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar*, 345 F.3d 570, 572–73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967)). Both of these factors are weighed on a sliding scale, but each must be satisfied "to at least a minimal degree." *Neb. Pub. Power Dist.*, 234 F.3d at 1039.

*Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013).

The court finds that plaintiff has standing to raise this issue. He has previously participated in initiative referendums in Nebraska. He has a specific initiative he wishes to undertake at this time. Plaintiff has articulated concrete injury, a violation of his First Amendment and Equal Protection rights to obtain signatures on the basis of one person, one vote. The court finds that is sufficient injury. The court cannot imagine that plaintiff has to collect signatures that violate the Nebraska Constitution and then present the petition to the Secretary of State, only to have it denied. This alleged injury, the court finds, is causally related to enforcement of the Nebraska Constitution. The court also concludes that if plaintiff prevails, his injury will be redressed. The court further finds the case is ripe for review, as plaintiff wishes to place an initiative on the ballot regarding lowering the percentage requirement for initiative petitions. The court finds there is an actual case and controversy which is ripe for review.

For these reasons, the court finds the plaintiff may proceed in this lawsuit as to the merits of the residency requirement, and the motion for summary judgment is

denied. Further, the court will order the magistrate judge in this case to progress this case either to trial or schedule deadlines for cross-motions for summary judgments as to the merits of the residency requirement.[3]

THEREFORE, IT IS ORDERED:

1. Defendant TeBrink's motion for summary judgment, Filing No. 24, is granted and she is dismissed from this case.

2. The motions for summary judgment, Filing No. 24 and Filing No. 27, are granted with regard to the issue of paid circulators.

3. Defendant Gale's motion for summary judgment against plaintiff for the residency requirements, Filing No. 27, is denied.

4. The defendants' objection to indices, Filing No. 40 and Filing No. 42, are denied.

5. The magistrate judge is ordered to progress this case either to trial or schedule deadlines for cross-motions for summary judgments as to the merits of the residency requirement.

Dated this 19th day of February, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

[3] The court will deny the defendants' objections to indices, Filing No. 40 and Filing No. 42, as the court found them to be both relevant and could easily discern those items that are not relevant or are otherwise inadmissible.

14