IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENT BERNBECK,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN A. GALE, Nebraska Secretary of State,<br><br>Defendant. | **8:13CV228**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the stipulated record of the parties. See Filing No. 47. The parties additionally offered eleven exhibits, including relevant statutes, legislative history, the petitions, and census data. Plaintiff also filed a third declaration of Kent Bernbeck, and defendant submitted an affidavit of L. Neal Erickson. The court finds the following facts and conclusions of law.

## FINDINGS OF FACT

Plaintiff Kent Bernbeck and defendant John A. Gale, Nebraska Secretary of State, stipulate and agree that the following facts are true and that this stipulation and the agreed upon documents may be received as evidence without any objection, other than on the basis of relevancy.[1]

1. Plaintiff Kent Bernbeck is a citizen and resident of the State of Nebraska. Mr. Bernbeck has resided in Douglas County, Nebraska, since 2009. Prior to that time, Mr. Bernbeck lived in Lincoln, located in Lancaster County, Nebraska, for approximately fifteen years. Mr. Bernbeck has resided in Nebraska since the age of three, and was raised in Stanton County, Nebraska.

---

[1] References to Exhibits A-K as set forth in these facts are found at Filing No. 48, Attachments 1-11.

2. Defendant Secretary John A. Gale, in his official capacity, is and was at all pertinent times the duly elected and acting Secretary of State of the State of Nebraska. Secretary Gale was appointed to the office of Secretary of State in December 2000, and elected to the office in 2002. Secretary Gale was reelected to the office of Secretary of State in 2006 and 2010.

3. Under the Nebraska Election Act, Neb. Rev. Stat. §§ 32-101 to 32-1551 (2009, Cum. Supp. 2012 and Supp. 2013) [the "Act"], Secretary Gale supervises the conduct of primary and general elections in Nebraska, and enforces the Act. He is also the State's chief election officer. Secretary Gale also performs and is responsible for certain duties related to the statewide initiative and referendum petition process established pursuant to Neb. Rev. Stat. §§ 32-1401 to 32-1416 (2008). The Secretary is responsible for oversight and implementation of requirements concerning the numbers of initiative and referendum petition signatures necessary to be placed on the ballot for statewide initiative and referendum petitions. Secretary Gale is sued in his official capacity only.

4. Mr. Bernbeck has sponsored or co-sponsored five statewide initiative petitions in Nebraska and has provided consultation or assistance on four others. Mr. Bernbeck has been a plaintiff in previous cases involving the rights of initiative and referendum in Nebraska, including *Bernbeck v. Gale*, U.S. Dist. Ct. No. 4:10cv3001 (D. Neb.) and *Bernbeck v. Moore*, 126 F.3d 1111 (8th Cir. 1997).

5. Mr. Bernbeck filed a statement with Secretary Gale on January 25, 2012, along with co-sponsors Mike Groene and Mark Schneiderjans, as sponsors of an initiative petition for a constitutional amendment to lower the signature threshold

requirements for initiative and referendum petitions in Neb. Const., art. Ill, §§ 2 and 3. A true and correct copy of that statement and sample initiative petition is attached as Exhibit A. No signed petitions for this proposed measure were filed with Secretary Gale for signature verification.

6. Mr. Bernbeck filed a sworn statement with Secretary Gale on July 23, 2012, to sponsor an initiative petition for a constitutional amendment to lower the signature threshold requirements for initiative and referendum petitions in Neb. Const., art. Ill, §§ 2 and 3. A true and correct copy of that sworn statement and sample initiative petition is attached as Exhibit B. No signed petitions for this proposed measure have been filed with Secretary Gale for signature verification.

7. Mr. Bernbeck simultaneously circulated multiple initiative petitions in Nebraska cities and towns seeking to place municipal initiative issues on the ballot. Mr. Bernbeck was the sponsor of one such municipal initiative petition filed in 2012 with the Clerk of the Village of Denton, Nebraska. After Mr. Bernbeck filed completed, signed initiative petitions with the Clerk of the Village of Denton, the Village filed a complaint in State District Court asking the court to determine the validity of the initiative petition. The State District Court found the Village was not required to place the initiative petition on the ballot, finding three signatures were invalid because a circulator was paid on a per-signature basis to obtain three signatures in violation of Neb. Rev. Stat. §§18-2517 and 32-630(3)(g), and that, after invalidation of these signatures, the initiative petition had only thirteen valid signatures and thus did not meet the threshold of sixteen signatures required for the measure to be placed on the ballot.

8. The United States Census Bureau ["Bureau"] estimates that Nebraska's 2012 population was 1,855,350, and that Nebraska's 2013 population was 1,868,516. A true and correct copy of the Nebraska QuickFacts page from the Bureau's website at http:/quickfacts.census.gov/qfd/states/31000.html is attached as Exhibit C.

9. Nebraska has 93 counties. The Bureau's estimate of the population of Douglas County, Nebraska, as of July 1, 2012, is 532,265. Based on this estimate, Douglas County is home to approximately 28.68 percent of the population of Nebraska. Douglas County is adjacent to the County of Sarpy. Sarpy County's estimated 2012 population is 165,853 persons, or 8.93 percent of the State's population. Douglas County is also contiguous with Dodge County. Dodge County's estimated 2012 population is 36,427 or 1.963 percent of the State's population. Washington County is also contiguous with Douglas County. Washington County's estimated 2012 population is 20,252, or 1.1 percent of the State's population. Saunders County is also contiguous with Douglas County. Saunders County's estimated 2012 population is 20,823 or 1.1 percent of the State's population. Of Nebraska's 93 counties, 41.77 percent of its 2012 estimated population lives in five counties—Douglas, Sarpy, Saunders, Dodge, and Washington. Attached as Exhibit D is a true and correct copy of population estimates for each of Nebraska's 93 counties as of July 1, 2012, from the Bureau's website at http://factfinder2.census.gov/bkmk/table/1.0/en/PEP/2012/PEPANNRES/0400000US31.05000.

10. Based on the Bureau's estimated population data for Nebraska counties as of July 1, 2012, sixty-six counties have populations under 10,000 persons each. Twelve Nebraska counties have estimated populations of fewer than 1,000 persons each.

11. The distance across Nebraska, measured by the traveling distance on Interstate 80, is 454.15 miles from the easternmost exit onto Interstate 80 in Douglas County, Nebraska, where plaintiff resides, to the westernmost exit, Exit 1, located .48 miles east of the Nebraska-Wyoming border at Pine Bluffs, Wyoming. Measured by travel on US Highway 81 from Chester, Nebraska, on the Kansas border, to South Yankton, on the South Dakota border, the distance is 217.5 miles. The driving time from border to border within Nebraska from north to south is estimated at 3 hours 50 minutes, and at Interstate speeds the travel time from the Pine Bluffs, Wyoming, exit to the western edge of Council Bluffs, Iowa, is estimated at 6 hours 30 minutes.

12. Neb. Const. art. Ill, § 2, requires that, for initiative petitions, "the registered voters signing such petition shall be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state." Neb. Const. art. Ill, § 3, requires that "[p]etitions invoking the referendum shall be signed by not less than five percent of the registered voters of the state, distributed as required for initiative petitions. . . ." These provisions require that an initiative or referendum petition must be circulated in at least 38 of 93, or 40 percent, of Nebraska counties.

13. The initiative and referendum powers first became part of the Nebraska Constitution in 1912 following approval by the voters of Nebraska. A true and correct copy of these constitutional provisions is attached as Exhibit E.

14. Following the Constitutional Convention of 1919-20, the voters of Nebraska approved an amendment (No. 4) to the initiative and referendum powers in the Nebraska Constitution. A true and correct copy of these amended constitutional provisions is attached as Exhibit F.

15. The voters of Nebraska approved an amendment to the initiative and referendum powers in the Nebraska Constitution by approval of 1988 Neb. Laws LR 248, § 1. A true and correct copy of these amended constitutional provisions is attached as Exhibit G.

16. In 1998, the voters of Nebraska approved an amendment to the initiative and referendum powers in Neb. Const. art. III, §§ 2 and 3, by approval of 1997 Neb. Laws LR 32CA, §§ 1 and 2. A true and correct copy of these amended constitutional provisions is attached as Exhibit H.

17. In 2004, the voters of Nebraska approved an amendment to the initiative power in Neb. Const. art. III, § 2, by approval of Initiative Measure No. 418, § 1. A true and correct copy of the amended constitutional provision is attached as Exhibit I.

18. Attached as Exhibit J is a true and correct copy of the current Nebraska Constitutional provisions (Neb. Const. art. III, §§ 2 through 4) governing the powers of initiative and referendum.

19. Attached as Exhibit K is a true and correct copy of pages 264 and 265 of the 2012-13 Nebraska Bluebook, Vote on Initiated and Referred Measures, 1914-2012. Filing No. 48, at 1-6.

**CONCLUSIONS OF LAW**

The court first notes that it has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this involves the First Amendment to the United States Constitution free speech clause as well as the Fourteenth Amendment's due process and equal protection clauses. The case is likewise authorized under 42 U.S.C. § 1983 as well as under 28 U.S.C. §§ 2201 and 2202 for declaratory relief.

Plaintiff makes facial challenges to the constitutionality of Neb. Const. art. III, § 2 and seeks declaratory judgment declaring Neb. Const. art III, § 2 unconstitutional and void.[2] Neb. Const. Art III, §§ 2 and 4 set forth the standards sponsors and circulators must meet in order to have their initiative placed on the ballot for consideration by the voters. Plaintiff contends that this section is unconstitutional. Plaintiff argues § 2 imposes on the sponsors and circulators of the initiative petitions distribution conditions which require the circulators of the initiative petitions, who meet the threshold signer requirements of seven percent and ten percent, depending on the issue, to distribute them "so as to include five percent (5%) of the registered voters of each of two-fifths of the counties of the state" before filing with the Secretary of State and submitting it to the electors. *Id*. at § 2. Section 4 likewise states: "the whole number of votes cast for governor at the general election next preceding the filing of an initiative or a referendum petition shall be the basis on which the number of signatures to such petition shall be computed." Neb Const. art III, § 4, sentence 1. Plaintiff contends that these two sections chill his right to core political speech, and his right to circulate petitions and vote; infringe on the one-man-one-vote principal; dilute his voice versus those citizens in sparsely populated rural counties in Nebraska; and increase the costs of obtaining signatures in order to travel to the counties with lower population.

[2] This court previously found:

> Plaintiff has participated in numerous statewide initiative efforts in the past and states he wishes to do so in the future. Plaintiff states he wants to offer Nebraska voters a statewide constitutional amendment to lower the required numbers for initiative and referendum ballot petitions. He argues that Nebraska's geographic distribution requirements for initiative petition signatures make rural signatures more valuable and more powerful than urban signatures, thereby violating one-person-one-vote criteria. Petition circulation involves "both the expression of a desire for political change and a discussion of the merits of the proposed change." Meyer v. Grant, 486 US 414, 421 (1988). It is "core political speech." *Id*. at 422.

Filing No. 44, Memorandum and Order, at 10.

In response, defendant argues that §§ 2 and 4 are constitutional on their face. Further, the defendant states:

> From 2002 through 2008, ten initiative and referendum petitions were submitted to the Secretary of State for signature verification. (Doc. #49 at 2, ¶ 4 and Attachment A). All of these ten initiative and referendum petitions met the Signature Distribution Requirement, with counties meeting the five percent signature requirement ranging in number from a low of 49 counties to a high of 86 counties. (Doc. #49, Attachment A). For the other petitions, the number of counties meeting the five percent signature requirement were: 57, 65, 58, 66, 59, 67, 82, and 66. (Doc. #49, Attachment A).

Filing No. 57, at 4-5. Defendant contends these numbers show there is no merit to plaintiff's claims of constitutional violations.

*A. First Amendment*

The burden is on the plaintiff when making a facial challenge to a statute. As stated by the Supreme Court "the challenger must establish that no set of circumstances exists under which the [law] would be valid." *United States v Salerno*, 481 U.S. 739, 745 (1987). The court must look to the "character and magnitude" of the burden placed on the challenger's First Amendment rights caused by the state's regulation and weigh that against the state interests. *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997). Political speech is protected speech. *Buckley v Valeo,* 424 U.S. 1, 14 (1976), citing *Roth v U.S.,* 354 U.S. 476, 484 (1957).

Plaintiff argues the court must apply the strict scrutiny test, and the government must show that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v Federal Election Com'n,* 558 U.S. 310, 340 (2010) (quoting *FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 464 (2007)). Plaintiff contends that petition circulation is "core political speech" and requires an exacting

scrutiny analysis. *Meyer v. Grant*, 486 U.S. 414, 420-422 (1988)._ Plaintiff argues the distribution requirement dilutes the voices and votes of those living in the most populated counties.

Defendant contends that there is no unconstitutional inhibition on free speech. Further, defendant argues that strict scrutiny only applies in the narrowest of circumstances, asserting that "a state law regulating the initiative process must somehow substantially restrict core political speech before it will be subject to strict First Amendment scrutiny. . . ." *Hoyle v. Priest*, 59 F. Supp. 2d 827, 836 (W.D. Ark. 1999), aff'd 265 F.3d 699 (8th Cir. 2001). Defendant points out there are no content restrictions or communication restrictions pursuant to § 2. Defendant contends there is no limitation on ability to speak; no core speech violation; no need to apply the strict scrutiny test; and no first amendment violation. *See Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).[3] Defendant contends that a number of state interests are served by the distribution requirement including "initiatives have broad-based, geographical and popular support" while also attempting to "[protect] minority interests against majority rule" and that "voters are informed." Filing No. 57 at 22. Defendant argues the requirement is neutral and narrowly drawn, and supports important state interests.

---

[3] The Eighth Circuit determined that the case did not implicate the strict scrutiny standard, holding:

> Because article Ill, § 2 [of the Nebraska Constitution], as interpreted by the Nebraska Supreme Court in *Duggan,* does not involve restrictions on the circulation of petitions nor the communication of speech, political or otherwise, we affirm the district court's conclusion that the provision does not violate the First Amendment.

*Dobrovolny*, 126 F.3d at 1113.

"While the Nebraska provision may have made it difficult for appellants to plan their initiative campaign and efficiently allocate their resources, the difficulty of the process alone is insufficient to implicate the First Amendment, as long as the communication of ideas associated with the circulation of petitions is not affected." *Dobrovolny*, 126 F.3d at 1112-13. The courts have concluded that "both the expression of a desire for political change and a discussion of the merits of the proposed change" encompass petition circulation issues. *Buckley v. American Constitutional Law Foundation, Inc.,* 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant,* 486 U.S. at 425). It is "core political speech." *Meyer* at 422.

The Eighth Circuit recently found that certain summary statements relating to initiative proposals did not violate core political speech, thus finding the, "exacting scrutiny test used in *Meyer* and *Buckley"* inapplicable, stating that, "[w]here no restriction on speech has been shown, courts have refused to apply exacting scrutiny," as plaintiff "ha[d] not shown that it ha[d] been limited in its ability to speak," and the court found "it ha[d] not made out any First Amendment claim." *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 676-77 (8th Cir. 2012). The Eleventh Circuit has also stated "[t]he distinction is between laws that regulate or restrict the communicative conduct of persons advocating a position in [an initiative], which warrant strict scrutiny, and laws that determine the process by which legislation is enacted, which do not." *Initiative and Referendum Institute v. Walker,* 450 F.3d 1082, 1099-1100 (10th Cir. 2006).

In the alternative, some courts have determined that this is a Free Speech issue, as the initiative petition process is involved, and have applied a balancing test to these

cases. *See American Constitutional Law Foundation, Inc. v. Meyer*, 120 F.3d 1092 (10th Cir. 1997); *Campbell v. Buckley*, 11 F.Supp.2d 1260 (D. Colo. 1998); *Burdick v. Takushi*, 504 U.S. 428 (1992) (balancing test). The Court in *Burdick* stated: "[i]t does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id*. at 433. To the contrary, elections must be substantially regulated if they are to be orderly, fair and honest, and election laws will invariably impose some burden upon individual voters. *Id*. at 433. As a result, "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id*. at 433.

The court finds that the signature distribution requirement is administrative and procedural in many respects. The court further finds that there is no hindrance on the ability to speak, organize, or circulate petitions, and thus the Eighth Circuit instructs that strict scrutiny does not apply. *Missouri Roundtable*, 676 F.3d. at 676. It matters not that the process is more difficult or costly, as long as the message can be conveyed. *Dobrovolny*, 126 F.3d at 1112-13. The court determines that the Nebraska Constitution regarding geographic distribution does not implicate the First Amendment to the United States Constitution. Accordingly, the court will dismiss the plaintiff's First Amendment claims.

*B. Equal Protection Clause*

Plaintiff agrees that a state does not have to allow initiatives, but when it does, it "subjects itself to the requirements of the Equal Protection Clause." *Idaho Coalition*

*United For Bears v. Cenarrusa*, 342 F.3d 1073, 1077 n.7 (9th Cir. 2003). Defendant contends that the signature distribution requirement must violate a fundamental right or target a suspect class. *Romer v. Evans*, 517 U.S. 620 (1996). Defendant contends there is no suspect class. Generally, classifications include race, national origin, gender and alienage. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432. 440 (1985). The court agrees there is no typical suspect class in this case.

However, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v Gore*, 531 U.S. 98, 104-105 (2000). The Supreme Court has stated:

> Since the achieving of fair and effective representation for all citizens is concededly the basic aim of legislative apportionment, we conclude that the Equal Protection Clause guarantees the opportunity for equal participation by all voters. . . . Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race or economic status.

*Reynolds v. Sims*, 377 US 533, 565-66 (1964).

Although this court is clearly not bound by state court decisions, the Utah Supreme Court, in a case similar to this one, has also stated with regard to a multi-county signature requirement, requiring signatures in 20 of the 29 counties which would equal 10% of the votes cast in the county for governor that:

> . . . intrinsically discriminatory against voters in urban counties because it impermissibly exalts the power of voters in rural, sparsely populated counties: The multi-county signature requirement effectively increases the relative weight of the signatures of voters in the rural counties and diminishes the relative weight of signatures of urban voters, permitting rural voters to foreclose the placement of an initiative on the ballot, even if

> the majority of the voters in the state desire the initiative to be on the ballot. In Utah, three-fourths of the state's population resides in only 4 Wasatch Front counties: Weber, Davis, Salt Lake, and Utah.

*Gallivan v. Walker,* 54 P.3d 1069 (Utah 2002).[4] Similarly, Nebraska's most populous counties, Douglas, Sarpy, Washington, Saunders, Dodge and Lancaster, account for approximately 57% of the population. Plaintiff argues that 17 votes in Arthur County and 19 votes in Blaine County, for example, hold power equal to 9,044 votes in Lancaster County or 16,082 voters in Douglas County. In short, argues plaintiff, his vote as a Douglas County resident equals 1/946 of an Arthur County resident's vote.

Idaho, with a geographic distribution similar to Nebraska, likewise had its law invalidated in 2003. In Idaho, 60% of the populations resided in 44 counties, and the initiative law required six percent of the voters in at least half of the counties in the state. The Ninth Circuit Court of Appeals stated:

> Here, in the smallest county a "vote" may count where 61 others sign, whereas in the largest county it may require up to 18,054 other signatures before the individual's "vote" will count. Both the Idaho and the Illinois requirements [in *Moore*] violate the Equal Protection Clause, because they allocate equal power to counties of unequal population. Because some of Idaho's counties are far more heavily populated than others, an initiative that is popular primarily with voters in sparsely populated counties can reach the ballot with the support of many fewer voters than can an initiative that is popular primarily with voters in densely populated counties. . . . [T]he Idaho system violates equal protection because the few voters in a sparsely populated county have a power equal to the vastly larger number of voters who reside in a populous county. In short, an electoral system, here the system governing the people's right to place initiative measures on the ballot, may not be based on treating unequal counties equally and making the electoral determination dependent on the support of numbers of counties rather than numbers of people.

---

[4] This case was decided primarily on state law grounds, although the court noted that state law is generally considered the same as the Equal Protection Clause of the United States Constitution. *Id*. at 1084-85.

*Idaho Coalition*, 342 F.3d at 1078.

A Nebraska Federal District Court addressed a similar issue. *Libertarian Party of Neb. v. Beermann*, 598 F. Supp. 57 (D. Neb. 1984). In the *Beermann* case, Nebraska required that the petitions have one percent of the state governor votes in at least one-fifth of the counties. The court stated:

> It appears to this Court that the most equitable means of assuring that the petitioning candidate or party demonstrates the necessary evidence of statewide support without unduly burdening such party would be to require that the petitions be signed by a percent of the voters in each congressional district. Congressional districts must be nearly equal in voting population. This would avoid a rural-urban split such as could easily arise in Nebraska."

*Id*. at 62.

The court agrees that the right to vote is clearly fundamental. *See Kramer v. Union Free School District,* 395 U.S. 621, 626-27 (1969). This includes the belief that one person, one vote is important in our voting system. *See,* e.g., *Moore v. Ogilvie* case (to gain access to the ballot as an independent candidate, the candidate had to get petitions with 25,000 signatures, with 200 qualified voters from at least 50 Illinois counties; the Court found this violated the one person one vote rule.) *Moore v. Ogilvie,* 394 U.S. 814 (1969). The court finds that the facts presented in this case show clearly that urban votes are diluted under the Nebraska Constitution. Plaintiff's evidence as discussed herein is compelling in that regard. This is a violation of both the Equal Protection and Due Process clauses of the United States Constitution. The Nebraska Constitution does not yield equality among citizens, but instead it gives more weight to the power of rural votes. This cannot withstand scrutiny under the Equal Protection and Due Process clauses of the United States Constitution. The court finds the Nebraska

Constitutional requirements as set forth in §§ 2 and 4, as they apply to the distribution requirement, unconstitutional under the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

THEREFORE, IT IS ORDERED:

1. The court finds the distribution requirement set forth in the Neb. Const., art. III, §§ 2 and 4 unconstitutional under the Fourteenth Amendment to the United States Constitution.

2. The court issues a permanent injunction enjoining the defendant from enforcing the distribution requirement in Neb. Const., art. III, §§ 2 and 4.

3. The plaintiff has 30 days from the date of this order to file a properly supported motion for costs and attorney fees. Thereafter, the defendant shall have 30 days to respond, and the plaintiff shall have 7 days to file a reply brief.

DATED this 10th day of November, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge